NORTHERN PACIFIC RAILWAY COMPANY, Camas Prairie Railroad Company, King Street Passenger Station, Plaintiffs,

v.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Defendant,

v.

UNITED TRANSPORTATION UNION, Intervener.

No. 3–69–Civ–299.

United States District Court,
D. Minnesota,
Third Division.

Feb. 10, 1970.

Frank S. Farrell and Barry McGrath, St. Paul, Minn., for plaintiffs.

Thomas Vennum and Kenneth F. Kirwin, Minneapolis, Minn., for defendant.

Eugene A. Rerat and Patrick J. Foley, Minneapolis, Minn., for intervener.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This controversy, now here on a motion for a temporary injunction, involves an interstate railroad and two of the Unions whose members serve it as enginemen and revolves around proposals for training firemen to serve as engineers.

On New Year's Eve the Court temporarily restrained the defendant Brotherhood from striking plaintiff railroad. By stipulation of the parties, the Court continued the restraining order until decision on the pending motion for a temporary injunction.

Arguments on the motion were heard on January 19, 1970. By agreement of the parties, the United Transportation Union was permitted to intervene, with the understanding that the Court would later rule on its motion to do so. It joins plaintiff in urging the issuance of a temporary injunction. The matter was submitted on the pleadings and affidavits. Briefs have been filed.

Jurisdiction is established.

It would be supererogatory to detail all of the background facts. They are fully reflected in the file. It is enough to summarize by saying that for many years the members of two separate Railroad Brotherhoods have served the plaintiff Northern Pacific (N.P.) as enginemen. They are the Brotherhood of Locomotive Engineers (BLE), and the United Transportation Union (UTU-E), formerly the Brotherhood of Locomotive Firemen and Engineers.

Those employees working as firemen may hold memberships in BLE or UTU, but their pay and working conditions are governed exclusively by the agreement between the carrier and UTU-E.

Those employees working as engineers may hold membership in BLE or UTU-E, but their pay and working conditions are governed exclusively by the agreement between the carrier and BLE.

There is a marked diversity of interest and much rivalry between the two Unions. *I. e.* see Brotherhood of Loc. Fire & Eng. v. National Mediation Bd., 410 F.2d 1025 (D.C.Cir. 1969). Both Unions seek engineer apprentice training programs and have filed Section 6 notices

under the Railway Labor Act to effect such changes. 45 U.S.C.A. § 156.

The threatened strike on December 31, 1969 directly involved the engineer apprentice issue and was apparently occasioned by a fear on the part of BLE that the N.P. was going to promote firemen to engineers after less than 3 years' service as firemen, an action which the BLE claims would be contrary to the present practice and to the collective bargaining agreement between BLE and the N.P. BLE's apprehension was caused, at least in part, by its learning in December, 1969, that N.P. had agreed on October 27, 1969, with the rival Union, UTU-E, that firemen of that Union would be eligible for promotion to engineer on the basis of fitness, ability, record of employment and length of service without the necessity for a prior 3 years' service as firemen. BLE claims this would change the status quo as to it and justifies the strike.

Another justification is offered. The BLE, on June 10, 1969, served a Section 6 notice on N.P. to secure changes in the BLE-N.P. collective bargaining agreement to establish an apprentice engineer program covering the filling of positions as engineers. That Section 6 notice is still pending before the National Mediation Board. So is a Counter Section 6 notice by N.P. BLE claims the N.P. has not engaged in good-faith bargaining on the issues and that such justifies it resorting to the attempted self-help.

■ It is well settled that, the Norris-LaGuardia Act notwithstanding, there can be no legal strike of a carrier where the administrative machinery of the Railway Labor Act has not been first employed and exhausted.

■ It appears that the dispute over the establishment of an engineer apprentice program is a "major" as distinguished from a "minor" dispute in that it envisions a change in the current agreement between the N.P. and BLE and is, therefore, one properly before the National Mediation Board. The status quo provisions of the Railway Labor

Act clearly apply and thus prohibit a strike until 30 days after the National Mediation Board advises the parties it is terminating its mediation services. 45 U.S.C.A. §§ 155, 156. See Detroit & Toledo Shore Line R. R. Co. v. United Transp. Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325, December 9, 1969.

The apprentice engineer issue between N.P. and BLE is still before the National Mediation Board and hence, absent justification, a strike would be illegal.

BLE agrees with the general principle that a Union may not strike in regard to a matter which is still pending before the National Mediation Board, but claims that here the carrier is guilty of illegally changing the status quo between the parties by entering into the October 27, 1969 agreement with its rival Union, UTU, by which the compulsory three-year service as a fireman requirement was abrogated.

But an examination of the memorandum of agreement reflects that, while it does alter the N.P.-UTU relationship as to the eligibility of firemen for promotion to engineer, it does not affect the N.P.-BLE relationship on this or any other terms of their relationship.

It is quite clear that the N.P. must deal separately with each of the two rival Unions and, in this instance, concerning the same subject—engineer apprentice training. Each Union has filed a Section 6 notice on the issue. The N.P. has reached agreement (subject to the eventual disposition of its Section 6 notice) with the UTU-E on the engineer training issue as it pertains to abolishing the three-year firemen service prerequisite. The N.P. and BLE have not agreed. But the N.P.-UTU-E agreement of October 27, 1969 does not impinge upon or alter the existing N.P.-BLE relationship. It confines itself to the relationship of the members of UTU-E to the N.P.

The status quo remains the same as to BLE and N.P. An employee working as an engineer (regardless of his Union affiliation) is governed by the N.P.-BLE agreement and similarly an employee

working as a fireman (regardless of his Union affiliation) is governed by the N.P.-UTU-E agreement. The evidence reflects N.P.'s expressed intention to respect these agreements.

 In my view there is no basis for defendants' claim that the threatened strike was justified because of a change in its status quo with N.P.

 Defendant also asserts a failure by the N.P. to bargain in good faith on the issue as justification for the threatened strike. I see no merit in this argument. Our examination of the chronology reflects that since June 10, 1969 when defendants' Section 6 notice was served, the matter has proceeded in the ordinary channels to the point where the issue now rests with the National Mediation Board awaiting the appointment of a mediator. There is no evidence of the absence of good faith. The fact that the issue has not been resolved is, of course, not proof of bad faith. The plaintiff also accuses the defendants of bad faith in threatening a strike during mediation. It has been observed that the procedures of the Railway Labor Act are "purposely long and drawn out." Brotherhood of Ry. & S. S. Clerks v. Florida E. C. Ry. Co., 384 U.S. 238, 246, 86 S.Ct. 1420, 1424, 16 L.Ed.2d 501 (1966).

I see no legal or equitable justification for the threatened strike. It was clearly illegal for defendants to strike during the pendency of the issue before the Mediation Board.

In my view the law and the equities strongly favor the plaintiff. Absent more, it is likely that the plaintiff will prevail on the issue at trial. Irreparable injury will occur to the plaintiff, to UTU-E, to other railroad employees, and to the public if the temporary injunction is not granted; it is unlikely that injury will result to defendants if the temporary injunction is granted.

The motion for preliminary injunction is granted, and defendant Brotherhood of Locomotive Engineers, each of its lodges, divisions, officers, agents, employees, and members, and all persons acting in concert with them, are enjoined from authorizing, calling, encouraging, permitting, or engaging in any strikes or work stoppages against, and from picketing the premises of, plaintiffs over any dispute relating to any and all provisions of the proposed apprenticeship agreement affecting the members of defendant, until final judgment is entered.

This expression is intended to comply with the requirements of Rules of Civil Procedure, 52 and 65(d).

The motion of UTU-E to intervene is granted.