GOODYEAR TIRE & RUBBER CO. v. RUBBER TIRE WHEEL CO. et al.

(Circuit Court, S. D. Ohio, W. D. July 18, 1908.)

No. 6,280.

1. PATENTS (§ 327*)—PATENTS—SUIT FOR INFRINGEMENT—EFFECT OF DECREE FOR DEFENDANT.

A final decree in favor of the defendant in a patent infringement suit entitles him to continue to make and sell the alleged infringing article free from interference by the complainant by virtue of the patent, and a court of equity having jurisdiction of the parties may by a decree in personam enjoin the complainant from interfering with the defendant's business by bringing suits against his customers, based on the same patent, either in this or a foreign country.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 327.*]

2. PATENTS (§ 189*)—SCOPE OF GRANT—RIGHTS IN FOREIGN COUNTRY.

The monopoly of a patent does not extend beyond the jurisdiction of the government granting it, and whatever effect a patent granted by one country has in another depends upon the status given to it by the laws of the latter.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 189.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3 EVIDENCE (§ 37*)—FOREIGN LAWS—LAWS OF CUBA UNDER MILITARY OCCUPATION.

Cuba, during the period of its military occupation by the United States, was not a part of the United States, but a foreign country, of whose laws an American court cannot take cognizance without plea and proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 52; Dec. Dig. § 37.*]

4. PATENTS (§ 327*) — REGISTRATION IN CUBA — SUIT FOR INFRINGEMENT IN CUBA.

By virtue of the Platt amendment, imposed by the United States on the Constitution of Cuba, which provided that "all the acts of the United States in Cuba during its military occupancy thereof are ratified and validated, and all lawful rights acquired thereunder shall be maintained and protected," United States patents registered in Cuba during such occupancy under circular No. 12 and civil order No. 160 of the Division of Customs and Insular Affairs of the War Department, which provided for such registration and that the rights thereby acquired should be the same as given by the Spanish laws, acquired by such registry the status of a Cuban grant; and a suit for infringement of such a registered patent in Cuba is based on such grant, and not upon the United States patent, and is not barred by a decree between the parties in the United States holding the original patent invalid.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 327.*]

In Equity.

H. A. Toulmen, for complainant.

Staley & Bowman (Thomas W. Bakewell, of counsel), for defendants.

LURTON, Circuit Judge. In a suit in this court in which the Rubber Tire Wheel Company and the Consolidated Rubber Tire Company sought to enjoin the present complainant, the Goodyear Tire & Rubber Company, from making or selling rubber tires which infringed the Grant patent, No. 554,675, it was adjudged that the Grant patent was invalid and that the bill of complaint should be dismissed. The opinion of the Circuit Court of Appeals, directing the dismissal of the bill for the reason stated, was reported in 116 Fed. 363, 53 C. C. A. 583. Since that decree the Goodyear Company has continued to make rubber tires at its factory in Ohio under the protection of that decree and to sell them to all who would buy.

This bill alleges that since that decree and under its protection it has sold large quantities of these tires to the firm of Jose Alvarez & Co., doing business at Havana, in the Republic of Cuba. It alleges that the defendant companies, through their agent, one Manning, residing in Havana, have wrongfully interfered with this business by proceeding against the said Jose Alvarez & Co. in the courts of Cuba, to stop that firm from buying or selling the product of complainants, alleging such products to be an infringement of the said patent, and have actually secured process from the Cuban courts which operates as an injunction, and have caused a proceeding, both criminal and civil, to be instituted against Jose Alvarez for an unlawful sale of goods which infringe the patent rights of the said Rubber Tire and Consolidated Companies.

The object of the bill is to enjoin the defendants from any interference with the customers of complainant in the Republic of Cuba,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by compelling them through a decree in personam to desist from interfering with the business of Jose Alvarez & Co., so far as that business is connected with the sale of rubber tires made by complainant under protection of the former decree between the parties now before the court. Upon the filing of the bill I made a restraining order, as prayed, to continue until notice could be given and an application be made and heard for an injunction pendente lite. Such notice has been given, and the case is now heard upon such motion; the application being based upon the bill and exhibits, supported by affidavits, and resisted by counter affidavits and exhibits. I shall content myself with a brief memorandum indicating the trend of my thought and my conclusion.

1. That the defendants in this suit are bound by the final judgment in the former suit is not controverted. One effect of that judgment is that, whether that decision was right or wrong, the Goodyear Company is entitled to make and sell rubber tires free from all interference from the defendant companies by virtue of the Grant patent. Another is that the defendants, as the defeated parties in that suit, may be enjoined or restrained from interfering with the business of the successful party by bringing suits based on the same patent against customers of the latter. Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065.

2. This court, as a court of equity having jurisdiction over the persons of the defendants, may control them, by decree in personam, from doing any act within or without the jurisdiction, at home or abroad, by bringing suit or otherwise, which shall be an interference with the right of the complainant to prosecute its business without interference with the defendants by virtue of the Grant patent. Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538; Penn v. Lord Baltimore, 1 Vesey, Sr. 444; Portarlington v. Selby, 3 Mylne & K. 104, 106; Story, Eq. Jur. §§ 899, 900. That this power extends to the restraining of proceedings under the Grant patent in the courts of Cuba, whenever the court has jurisdiction of the persons of the parties, there is doubt. The cases cited above are clear. Mr. Justice Story, cited above, thus states the principles:

"But, although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons and things within their own territorial limits. When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity in the latter may act in personam upon those parties, and direct them, by injunction, to proceed no further in said suit. In such a case these courts act upon acknowledged principles of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court; but, without regard to the situation of the subject-matter of the dispute, they consider the equities between the parties, and decree in personam according to those equities, and enforce obedience to their decrees by process in personam. * * * It is now held that, whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country, as the ends of justice may require, and with that view to order them to take any steps and proceedings in any other court of justice, whether in the same country or in any foreign country." 133 U. S. 118, 119, 10 Sup. Ct. 273, 33 L. Ed. 538.

These propositions are incontrovertible, and, if it be true that the proceeding in Cuba is based upon the Grant patent, it is clear that an injunction should be allowed as prayed. But this is the *point* upon which the right must turn: Is the proceeding in Cuba of which complaint is made based upon the Grant patent? The defendants' counsel deny, and say that the Cuban proceedings are brought upon a Cuban grant founded upon the United States patent to Grant. I am quite clear that, if this is true, this court must stay its hand and permit the Cuban courts to determine whether the Cuban grant has or has not been infringed by the sale of tires made in this country under the protection of the decree referred to.

Boesch v. Graff, 133 U. S. 697, 10 Sup. Ct. 378, 33 L. Ed. 787, seems to be controlling. In that case it appeared that an invention was first patented in Germany and then in this country. In a suit upon the German patent in Germany it was held that a certain producer was not affected by the patent, because he had prepared to make the product before the inventor applied for his patent. The American suit was upon the American patent. The defense was that the infringing articles were made in Germany by the person held by the German courts not to be affected by the German patent. But it was held that goods purchased in a foreign country from a person authorized there to sell them cannot be imported into this country and sold here without a license from the American patentee. But it is to be noticed that the American patent held to be infringed by goods free of the German patent for the same invention was an independent patent granted by the United States for the invention previously patented in Germany. In respect to the basis for the infringement suit pending in Cuba the bill avers that it is—

"based upon letters patent to A. W. Grant, No. 554,675, granted February 18, 1896, as registered in Cuba, and which are the same letters patent that were declared null and void by the Circuit Court of Appeals for the Sixth Circuit in its decree aforesaid; said registration of said Grant patent in Cuba having been made by the Rubber Tire Wheel Company during the occupancy of the island of Cuba by the United States military forces, namely, by a conditional registration on the 3d day of July, 1900, numbered 589, and by a final registration on the 29th of March, 1901, numbered 1,223, pursuant to the provisions of a circular of April 11, 1899 (circular No. 12). Divisions of Commerce and Insular Affairs, War Department, Washington, D. C., promulgated and published by G. D. Meiklejohn, Acting Secretary of War."

May the owners of the Grant patent escape the consequences of the adjudication which protects the complainants from interference by virtue of the Grant patent, whether that business is carried on within the United States or in Cuba, the parties being within the jurisdiction, simply by "recording" that patent in Cuba? Manifestly not, unless such "registration" under the laws of Cuba is equivalent to a Cuban grant of a patent for an invention previously patented in the United States.

The monopoly of a patent does not extend beyond the jurisdiction of the government granting it. Boesch v. Graff, 133 U. S. 697, 10 Sup. Ct. 378, 33 L. Ed. 787; Bullock Electric Company v. Westinghouse Electric Company, 129 Fed. 105, 63 C. C. A. 607. Whatever effect a patent granted by one country has in another

depends upon the status given to it by the laws of the latter. Any proceeding in Cuba against one making or selling the invention described in the American patent to A. W. Grant must be based upon some status or protection extended to that invention by the law of or treaties with that country.

That Cuba, during the period of its military government by the United States, was no part of the United States, but a foreign country, within the principle above stated, is not debatable under the decided cases. Neely v. Henkel, 180 U. S. 109, 21 Sup. Ct. 308, 45 L. Ed. 457; Pearcy v. Stranahan, 205 U. S. 257, 27 Sup. Ct. 545, 51 L. Ed. 793; United States v. Assia (C. C.) 118 Fed. 915. For this reason this court cannot take cognizance of the law of Cuba without plea and proof. Liverpool Steamship Company v. Phœnix Insurance Company, 129 U. S. 397, 445, 9 Sup. Ct. 469, 32 L. Ed. 788. The burden of showing that under the law of that country protection had been extended to the Grant invention rests upon the defendants. Only by showing such a status can they escape the effect of the former adjudication between the same parties. In Lloyd v. Guibert, L. R. 1 Q. B. 115, 119, Mr. Justice Willes said:

"A party who relies upon a right or exemption by foreign law is bound to bring such law properly before the court and to establish it in proof. Otherwise the court, not being entitled to notice such law without judicial proof, must proceed according to the law of England."

This principle is approved and the case cited in Liverpool Steamship Company v. Phœnix Insurance Co., cited above. The bill of complaint shows that the infringement proceeding pending in Cuba is based upon a Cuban "registration" of the Grant patent, authorized by an order of the military government of Cuba during the American occupation of that island. What was and is the legal effect of that "registration"? This is a question of Cuban law.

Cuba was not without a government and laws in the interval between the overthrow of the Spanish government and the institution of an independent Cuban government. The military government, which was substituted for the Spanish government, was the de facto government of Cuba while it lasted. Therefore rules of action, civil or criminal, prescribed by that government, constituted, so far as they went, the law of Cuba while that military government endured. Therefore I must concede to any order or decree of that government the same effect as if made by a civil government. To put it in another way: If the law of Spain, effective in her insular possessions, had provided that foreign patents might be "registered" in Cuba, the single question would be as to the legal effect upon such patent of such "registration." To the edict of the de facto government ad interim I think must be given all the consequences which would have followed from a similar law promulgated by the prior civil government. To discover the consequences of such "registration," we must not only examine the so-called "circular" under which the registration occurred, but also the prior system of protecting inventions under the Spanish law relating to Cuba.

The defendants, as before noticed, have neither pleaded nor answered. Neither have they filed a transcript of the record upon which they are proceeding against the complainant as an infringer. They did tender such transcript in Spanish, but, not being able or willing to have same translated in time for this hearing, they have notified me that they withdraw same. I do not, therefore, treat that transcript as before me, and am consequently deprived of such information as might be derived from knowing whether that proceeding on its face purports to be based upon a Cuban patent. The only evidence of any law of Cuba, whatever its source, is an exhibit filed by defendants of a printed book entitled "Legislacion Industrial." By an attested certificate of a notary public this book was issued by the authorization of the President of the Republic of Cuba, and contains "the patent and trade-mark laws, orders, decrees, etc., in force in Cuba, with their subsequent annulments and amendments." This book has not been objected to, and is therefore treated as proof of Cuban law relating to patent rights. Contained in that is the order of the Assistant Secretary of War of the United States of April 11, 1899, by virtue of which, as recited in the paragraph of the complainant's bill above set out, this Grant patent was recorded in Cuba. That order is as follows:

"In territory subject to military government by the military forces of the United States owners of patents, including design patents, which have been issued or which may hereafter be issued, and owners of trade-marks, prints and labels duly registered in the United States Patent Office under the laws of the United States relating to the grant of patents and to the registration of trade-marks, prints and labels, shall receive the protection accorded them in the United States under said laws; and an infringement of the right secured by lawful issue of a patent or by registration of a trade-mark, print or label shall subject the person or party guilty of such infringement to the liabilities created and imposed by the laws of the United States relating to said matters: Provided, that a duly certified copy of the patent or of the certificate of registration of the trade-mark, print or label, shall be filed in the office of the Governor General of the island wherein such protection is desired; and provided, further, that the rights of property in patents and trade-marks secured in the islands of Cuba, Porto Rico, the Philippines, and other ceded territory, to persons under the Spanish laws, shall be respected in said territory the same as if such laws were in full force and effect."

With respect to that order it should be observed that by its terms it was operative only in territory subject to military government by the military forces of the United States, and that it provides that patents so recorded shall receive "the protection accorded them in the United States under said laws," and that an infringer in Cuba under that order was subject only to "liabilities created and imposed by the laws of the United States relating to said matters." Treating this as Cuban law, it would seem to follow that, if the complainants were entitled to be free from interference by virtue of the Grant patent under the laws of the United States, they were equally free under this law of the military government. Under a later order, styled "Circular No. 21," of June 1, 1899, parties desiring "protection in territory under government of the military forces of the United States for patents, trade-marks, prints or labels, as provided in circular No. 12," were required to file certified

copies, etc., with the Governor General. A still later order by the military government of Cuba, styled "Civil Order No. 160," of June 13, 1901, provides as follows:

"(1) The rights of property in patents, copyrights, and trade-marks duly acquired in Cuba, the Isle of Pines, and the island of Guam pursuant to the provisions of Spanish law and existing in one or all of said islands on April 11, 1899, shall continue unimpaired for the period for which they were granted, and the owners thereof shall be protected and their rights therein maintained: Provided, that the original or a duly certified copy of the patent or of the certificate of registration of the trade-mark or copyright is filed in the office of the Governor of the island wherein such protection is desired.

"The certificates of registration of trade-marks issued prior to April 11, 1899, by a Spanish provincial registry or the national registry of Spain, at Madrid, or the international registry at the Bureau of the Union for the protection of Industrial Property, at Berne, Switzerland, shall receive such recognition and credence as were accorded them in said islands under Spanish sovereignty; and an original certificate or duly certified copy thereof shall be received and filed in the office of the Governor of the island for all purposes connected with this order without further or other certification.

"(2) The rights of property in patents, including design patents, granted by the United States, and trade-marks, prints and labels duly registered in the United States Patent Office, and in copyrights duly registered in the office of the Librarian of Congress, shall be maintained and protected by the government of civil affairs in the islands above named: Provided, that a duly certified copy of the patent or of the certificate of registration of the copyright, trade-mark, print or label is filed in the office of the Governor of the island wherein such protection is desired.

"(3) An infringement of the rights protected by compliance with the provisions of this order shall subject the person, firm, association or corporation guilty of such infringement to the civil and penal liabilities created and imposed by such of the laws of Spain relating to said matters as remain in force in said islands.

"(4) Such provisions of existing orders as are in conflict with this order are hereby revoked."

After the establishment of the independent government of Cuba, a decree was promulgated by the Department of Agriculture, Commerce, and Industries under date of June 21, 1902. That document is styled in the book of Cuban laws a "Decree of the Cuban Government on American Patents," and provides as follows:

"The military government of the United States having ended, by virtue of which, according to the express text thereof, circulars Nos. 12 and 21, of April 11 and June 1, 1899, respectively, of the Division of Customs and Insular Affairs of the War Department, Washington, relative to the registration of American brands and patents, are without value or effect, inasmuch as said circulars were issued for the territories subject to military government by the military forces of the United States, I have resolved that patents and brands of all kinds, prints, labels and trade-marks registered in the Patent Office of the United States, the deposit of which, for their protection in this island, is requested in the future, shall, from this day on, be registered in the department under my charge, if same is proper, through the medium of the same procedure followed for the registration of those of other countries and payment of $35 currency for patents and $12.50 currency for brands, prints, etc., or, that is, the same fees paid for all others, domestic and foreign, instead of $1 currency, fixed by the said circular No. 21, with respect to those of the United States.

"This is published in Gaceta de la Habana for general information."

The same book of industrial laws shows that the basis law applicable to Cuba prior to the military government of 1898 was the Roy-

al Ordinance of June 20, 1833, which law, except as affected by later "laws" of the ad interim government or the laws of the present Republic of Cuba, is still the law of that country. Under that law a grant might be obtained, upon the filing of a memorial accompanied by a drawing or model and proper description of the invention, of "anything which is not practiced and used either in these dominions or in any foreign country." The grant is made upon a representation of novelty and usefulness, but without any examination into that question. The privilege, when granted, is required to be recorded, and is not to be deemed an indorsement in any form of the novelty or usefulness of the invention; that being under that law a matter for determination judicially when novelty or usefulness is denied.

In view of this right to obtain a privilege of monopoly upon a mere representation of novelty and usefulness, I reach the conclusion that the legal effect of the military order set out in circular No. 12, above quoted, as amended by civil order No. 160, was to place a "registered" American patent in the status of a Cuban grant of a monopoly for the same invention before the subject of the American patent. Although circular No. 12 only operated to secure to patents so registered that measure of protection accorded them by the laws of the United States, the effect of civil order No. 160 was to extend to such "registered" American patents the identical remedies imposed by the laws of Spain in force relating to such matters against those who infringe a Spanish Grant in force in Cuba. Neither do I think that the decree of June 21, 1902, had, or was intended to have, the effect of destroying rights theretofore secured by such registration under the edicts of the military government. Those orders had ceased to be operative only because conditions had changed. A similar method of registration, with like protection, is provided by this decree of the civil government. That rights lawfully acquired under the military government in force during American occupancy of the island should not be affected by the institution of the government of the Republic of Cuba was one of the objects of the Platt amendment imposed by the United States upon the Constitution of Cuba. Of this amendment I may take notice, because its acceptance was made a condition of withdrawal from the island by the United States. The fourth section of that amendment provides:

"That all the acts of the United States in Cuba during its military occupancy thereof are ratified and validated, and all lawful rights acquired thereunder shall be maintained and protected."

This constitutes part of the fundamental law of Cuba, and validates or ratifies the acts done under the direction or by authority of the military government, and guarantees the protection of the rights acquired by the "registration" of the Grant patent. The defendants having made out their right to proceed under the "registered" Grant patent as an independent monoply protected by the law of Cuba, the case of the complainant fails. The subject-matter of the former suit in this case is not the same as the subject-matter of the pending Cuban suit. In the one case the American patent to Grant

was involved; in the other, a Cuban grant for the same invention. An essential element of estoppel is lacking. The stay order must be dissolved, and an injunction pendente lite denied. It would seem that no other relief is possible, if an injunction is inadmissible, and that the bill is without equity. If complainant cannot, upon a final hearing, make a different showing of fact touching the Cuban law applicable, and desires an early appeal to the Circuit Court of Appeals, they may draw a decree dismissing the bill for want of equity. If, however, it prefers to go to a regular hearing upon the full evidence as to the fact of Cuban law, the decree will simply deny the injunction and discharge the restraining order.