**DALMO SALES CO., Inc., et al.,**
Appellants,

v.

**TYSONS CORNER REGIONAL SHOP-
PING CENTER, etc., et al.**
No. 23915.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 20, 1970.
Decided June 8, 1970.

Mr. John F. Graybeal, Washington, D.C., with whom Messrs. Marcus A. Hollabaugh and Douglas V. Rigler, Washington, D.C., were on the brief, for appellants.

Mr. George Cochran Doub, Washington, D.C., with whom Mr. H. Max Ammerman, Washington, D.C., was on the brief, for appellee Tysons Corner Regional Shopping Center. Messrs. James C. McKay and George V. Allen, Jr., Washington, D.C., were on the brief, for appellees The May Department Stores Company and The Hecht Company.

Messrs. George W. Wise and David B. Lytle, Washington, D. C., were on the brief, for appellee Woodward & Lothrop, Incorporated.

Before TAMM and ROBINSON, Circuit Judges and MATTHEWS,* Senior District Judge.

MATTHEWS, Senior District Judge.

This appeal is from an order of the United States District Court for the District of Columbia denying the motion of appellants for a preliminary injunction.

In the District Court, appellants were plaintiffs. They are affiliated corporations which own electrical appliance and

* Sitting by designation pursuant to 28 U.S.C. § 294(c) (1964).

television stores. They are hereinafter referred to as plaintiffs or collectively as "Dalmo". The conduct of Dalmo's business involves receipt of goods shipped in interstate commerce.

The appellees, defendants in the trial court, are a general partnership and four corporations. The defendant partnership owns and operates a large shopping center at Tysons Corner, Virginia, known as Tysons Corner Regional Shopping Center, hereinafter called Tysons Center. The defendant, The Hecht Company, is a wholly owned subsidiary of the defendant, The May Department Stores Company, which, trading as The Hecht Company, operates the Hecht department stores in the greater Washington area, including a store at Tysons Center. These two corporations are hereinafter referred to collectively as Hecht or Hecht Company. The defendant, Woodward & Lothrop, Inc., hereinafter referred to as Woodward, also operates department stores in the greater Washington area, including a store at Tysons Center. The defendant, City Stores Company, operates the Lansburgh's department stores in the greater Washington area, including one at Tysons Center, and hereinafter is referred to as Lansburgh's.

Plaintiffs brought suit claiming that they have been prevented from leasing store space at Tysons Center as a result of joint action by the defendants amounting to a group boycott in violation of sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1, 2 (1964).[1] Plaintiffs seek treble damages, preliminary and permanent injunctive relief against the defendants under sections 4 and 16 of the Clayton Act, 15 U. S.C. §§ 15, 26 (1964).

The purpose of the preliminary injunction sought by plaintiffs was to enjoin Tysons Center from leasing certain designated space in its shopping center to any tenant other than plaintiffs pending the final hearing and determination of this litigation.

By an order dated January 2, 1970, the District Court denied the preliminary injunctive relief requested. The findings of fact and conclusions of law of the Court are found in Dalmo Sales Co. v. Tysons Corner Regional Shopping Center, 308 F.Supp. 988 (1970).

We are asked to set aside the order denying a preliminary injunction, and to remand the case with instructions to the District Court to enter a preliminary injunction as to Tysons Center requiring it to preserve pendente lite the particular shopping space sought by plaintiffs.

In order to reflect the setting of the present controversy a little background is necessary. Early in its development Tysons Center initiated efforts to rent space for long terms to several large department stores. During the period 1962–1965 representatives of the center met separately with officers of Hecht and Woodward. Then Hecht and Woodward negotiated as a block with Tysons Center pursuant to a "gentlemen's agreement" between them. This led to a lease covering a Hecht store at Tysons Center, and a substantially identical lease covering a Woodward store, the leases being executed on different dates in December 1965. These leases obligated the two stores for rents of at least $500,000 per year over a minimum period of 30 years. In 1968 a substantially identical lease was executed for a Lansburgh's store at Tysons Center.

The Hecht and Woodward leases have provisions granting each store the power to veto any prospective tenant at Tysons Center which is not among 465 stores on an approved list attached to the leases. The 465 stores listed include different types of stores carrying almost every kind of merchandise. At no time was Dalmo proposed for inclusion on the list.

---

1. Section 1 provides in effect that every contract or conspiracy in restraint of trade or commerce among the several states or with foreign nations is illegal. Section 2 provides that every person who shall monopolize or conspire with any other person to monopolize any part of such trade or commerce shall be guilty of a misdemeanor and be punished by a fine or imprisonment, or both.

In due course Tysons Center requested from Hecht and Woodward approval of each new tenant not on the approved list. About one-half of the specialty stores now in Tysons Center were not on the approved list and received the required approval from the department stores. Two establishments were disapproved. One, a restaurant, was disapproved by Hecht. The second disapproved store was Dalmo.

After negotiations for a lease took place between Dalmo and Tysons Center, the latter sent identical letters to the three department stores (Hecht, Woodward and Lansburgh's) requesting approval of the proposed tenant, Dalmo. Hecht responded February 27, 1969 disapproving of Dalmo. This was after an officer of Hecht had visited Dalmo stores. Woodward wrote on March 11, 1969 disapproving of Dalmo as a tenant as "not in keeping with the character of the center as it was conceived and as it currently exists." Lansburgh's made no response to the letter from Tysons Center. According to its lease, this failure to disapprove amounted to an automatic approval of Dalmo. Tysons Center regarded the disapproval of any one of the three department stores as sufficient to block entry of a prospective tenant.

Dalmo asserts that the policy of its stores of discount pricing and discount advertising is the real basis for the disapproval of Dalmo as a tenant at Tysons Center. Conversely, defendants assert that such disapproval was because Dalmo was not the type of store which would promote the image of fashion and quality desired for Tysons Center.

After the hearing in the District Court and many evidentiary submissions the Court issued an order denying plaintiffs' motion for a preliminary injunction, accompanied by findings of fact and conclusions of law which constitute the grounds of its action.

It was concluded by the trial judge as follows:

"The evidence on the present record is in conflict as to the motive and purpose of the department stores in ex-cluding Dalmo from the Tysons Corner Center. * * * In addition, discount prices or sales below list price were offered by the department store defendants as well as certain of the satellite stores at the Center. Such practices would seem to indicate that discount pricing alone was not a controlling consideration. Under these circumstances, it is doubtful whether the plaintiffs can show that the exclusion of Dalmo from Tysons Corner pursuant to the lease provisions constituted a group boycott *per se* violative of the antitrust laws.

"Group boycotts held by the Supreme Court to fall within the category of *per se* illegality have, with the possible exception of Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389, * * * involved significant anti-competitive motives. [Citing cases] Where there is absence of an anti-competitive motive, or where the anti-competitive motive is not clearly demonstrable, the legality of a group boycott under the Sherman Act may very well be subject to test under the rule of reason. [Citing cases] Specifically, the rule of reason may be applicable to boycotts involving competitors where the motives for exclusion are not directly profit related. [Citing cases] 308 F.Supp. 994.

"The presence of novel legal issues, which require resolution at trial, preclude the grant of a preliminary injunction. * * * The heavy financial stake of Tysons Corner and the department stores which are parties to long term leases in the future success of such an enterprise may very well give them the right to select and approve tenants who in their judgment will contribute to the success of the enterprise without being subject to the *per se* rule of illegality applied to group boycotts and concerted refusals to deal under the Sherman Act. * * * Any restraint involved in the sharing by Tysons Corner of such rights with the department stores

\* \* \* may very well be deemed to be a reasonable one under the antitrust laws. \* \* \* 308 F.Supp. 994–995.

"Plaintiffs have not established an intent to monopolize by the defendants or the existence of monopoly power in the relevant market. This court cannot conclude that a substantial likelihood exists that plaintiffs will establish these essential elements of their monopolization claim at trial." 308 F.Supp. 995.

This appeal by Dalmo followed the Court's order denying preliminary injunctive relief.

■■ The decision to grant or deny a preliminary injunction normally lies in the discretion of the trial judge.[2] Accordingly, the scope of appellate review of his action is limited. A Quaker Action Group v. Hickel, 137 U.S.App.D.C. 176, 421 F.2d 1111, 1115 (1969). As was said by this Court in Maas v. United States, 125 U.S.App.D.C. 251, 254, 371 F.2d 348, 351 (1966):

"Appellate courts quite generally view the grant or denial of a preliminary injunction as resting in the sound discretion of the trial court, and limit determination on appeal to whether there has been 'abuse of trial court discretion,' 'clear error,' 'violation of the rules of equity,' or 'improvident granting.'"

Addressing itself to these issues in Young v. Motion Picture Ass'n of America, 112 U.S.App.D.C. 35, 37, 299 F.2d 119, 121, cert. denied, 370 U.S. 922, 82 S.Ct. 1565, 8 L.Ed.2d 504 (1962), this Court said:

"Appellants recognize the general rule that a denial of a preliminary injunction will not be set aside on appeal unless the District Court's action constitutes clear error or abuse of discretion, and that ordinarily this court will not consider the merits of the case further than necessary to determine whether that discretion was abused."

■ In this case the District Court made a careful analysis of the issues and the evidence presented. The Court weighed the criteria and factors which guide a decision on the grant or denial of injunctive relief pending trial. We cannot say on the basis of the record that there was clear error or that the Court was arbitrary. We think the action of the Court was within its discretionary power.

Affirmed.

2. "When a motion for preliminary injunction is presented to a court in advance of hearing on the merits, it is called upon to exercise its discretion 'upon the basis of a series of estimates: the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of preliminary relief, the probability of the ultimate success or failure of the suit, the balancing of damage and convenience generally.' " Perry v. Perry, 88 U.S.App.D.C. 337, 338, 190 F.2d 601, 602 (1951). Accord, Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958); Liberty Lobby v. Pearson, 129 U.S.App.D.C. 74, 75, 390 F.2d 489, 490 (1968).