**WESTERN ELECTRIC COMPANY, INC., Plaintiff-Appellee,**

v.

**MILGO ELECTRONIC CORPORATION and International Communications Corporation, Defendants, Third-Party Plaintiffs-Appellants,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Third-Party Defendant.**

No. 76–4079.

United States Court of Appeals, Fifth Circuit.

March 6, 1978.

Rehearing and Rehearing En Banc Denied May 19, 1978.

William E. Sadowski, Miami, Fla., Jackson & Jones Law Corp., Co-Counsel, Stanley R. Jones, Tustin, Cal., for defendants, third-party plaintiffs-appellants.

Albert E. Fey, New York City, George L. Saunders, Jr., Chicago, Ill., for plaintiff-appellee.

John K. Aurell, Miami, Fla., for other interested party.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

GODBOLD, Circuit Judge:

Defendant Milgo appeals from the district court's order of summary judgment against it as to some of its counterclaims. We conclude that we lack jurisdiction to hear an appeal from this order.

### I. Facts

Both Milgo and Western Electric[1] manufacture terminal equipment known as data modems. "Modem" is an acronym for "modulation and demodulation."[2] Modems, when connected to telephone lines, allow computers to send and receive information to and from each other. Western sued Milgo for infringement of Western's modem patents. Milgo counterclaimed for damages and injunctive relief, alleging violations of the antitrust laws and acts of unfair competition.[3] Each claim alleged two separate but, to Milgo's view, interrelated

discriminatory practices employed by the Bell System. First, Bell has required customers using modems not of Western's design to install and lease a connecting device known as a Data Access Arrangement (DAA). Customers who use Western-designed modems are excused from this requirement. Second, Bell has required that customers who use modems of Western's design but manufactured by another source through a patent license pay a 2% royalty.

The district court's summary judgment dismissed those parts of the counterclaims based upon the DAA requirement. Its decision stemmed from the FCC's recent establishment of a registration program, 47 C.F.R. pt. 68, whereby terminal equipment and interconnection devices could be registered and approved by the FCC, and if a modem not of Western's design were registered, the use of an interconnection device would not be required.[4] The district court based its order on the doctrine of implied repeal, see, e. g., Gordon v. New York Stock Exchange, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1973), U. S. v. National Association of Securities Dealers, Inc., 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975), finding in particular that the antitrust laws were impliedly repealed in this area because of pervasive regulation by the FCC.

### II. Appealability

By a one-sentence order dated February 3, 1977, a panel of this court denied

---

1. Western Electric is the manufacturing arm of American Telephone & Telegraph Company (the Bell System).

2. "Foreign Attachment" Tariff Revisions in A.T.&T. Tariff FCC Nos. 263, 260, and 259, 15 F.C.C.2d 605, 607 (1968).

3. Milgo also alleged a violation by Western of the terms of a 1949 antitrust consent decree requiring it to grant patent licenses on its equipment. U. S. v. Western Elec. Co., 1956 Trade Cases ¶ 68,246 (D.N.J.1956). The district court dismissed this part of the unfair competition counterclaim on the theory that consent decree violations can be used only as defenses and not as causes of action. Milgo has not

appealed from the summary judgment against this counterclaim.

4. See First Report and Order in Docket No. 19528, 56 F.C.C.2d 598 (1975), aff'd, North Carolina Util. Comm'n v. FCC (North Carolina II ), 552 F.2d 1036 (CA4, 1977), cert. denied, —— U.S. ——, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977). Although modems were not specifically included within the scope of the registration program, the FCC later established that they were included. Memorandum Opinion and Order in Docket No. 19528, 57 F.C.C.2d 1216, 1219 (1976).

Western's motion to dismiss Milgo's appeal.[5] The panel in effect determined that an appeal could be maintained, but we are not bound by this determination. *EEOC v. International Longshoremen's Association,* 511 F.2d 273, 276 n. 5 (CA5), *cert. denied,* 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975).[6]

Milgo has raised two possible grounds for appealability: whether the partial summary judgment is a final decision under the collateral order doctrine, hence appealable under 28 U.S.C. § 1291, and whether it is an interlocutory order refusing an injunction, hence appealable under 28 U.S.C. § 1292(a)(1). We conclude that the district court's order is not a final decision. We need not decide whether the district court's order is an interlocutory order refusing an injunction because the prayer for injunctive relief, which the order refused, is now moot.

### (A.) Collateral order doctrine

■■■ Section 1291 confers on the courts of appeals "jurisdiction of appeals from all final decisions of the district court." 28 U.S.C. § 1291. Since the partial summary judgment against Milgo's counterclaims does not end the litigation, it can be a "final decision" only by virtue of the collateral order doctrine. *See Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Abney v. U. S.,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Litton Systems, Inc. v. Southwestern Bell Telephone Co.,* 539 F.2d 418 (CA5, 1976); *In re Nissan Motor Corp. Antitrust Litigation,* 552 F.2d 1088 (CA5, 1977). The statutory basis for this doctrine is that a trial court's disposition that is not a final judgment may nevertheless be a final "decision" if it adjudicates an "important right" collateral to the cause of action asserted that would otherwise be "lost, probably irreparably" if review had to await a final judgment. *Abney, supra,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d at 659, *quoting Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225, 93 L.Ed. at 1536. We have granted review under the collateral order doctrine when we have found either that the order concerned an issue wholly separable from the remainder of the case or that irreparable injury will result. *See 21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* 404 F.2d 31, 33 (CA5, 1968). In this case we find that the summary judgment neither concerns a wholly separable issue nor threatens irreparable injury.

---

5. Motions to dismiss and various other prehearing matters are assigned to screening panels of this court, each composed of three judges designated for one-year periods. A case in which a motion to dismiss is denied will later fall to a screening panel—not necessarily the same one—for consideration of whether it will be assigned to the summary calendar or the oral argument calendar. If not placed on the summary calendar the case will be assigned to an oral argument panel for hearing and decision. The present panel is the oral argument panel.

6. Action on a motion to dismiss before a case is assigned to an oral argument panel disposes of those cases in which appellate jurisdiction is clearly lacking so that the court and the advocates do not expend their efforts in a consideration of the merits that later would prove to be fruitless. Matters of appellate jurisdiction are also subject to scrutiny by the oral argument panel to whom the case falls. In *EEOC v. International Longshoremen's Association,* we said:

"Indeed, it might appear that once a panel of this Court had made a legal determination that jurisdiction exists, no subsequent panel on its own could make a contrary determination. Rather the original panel's action would appear, at the least, the law of the case, and could not be overruled except by this Court sitting en banc. Nonetheless, this Court has held that the panel deciding the case must make a de novo determination of jurisdiction. We have said: 'Although motions to dismiss have been denied under our administrative procedures, the Court of Appeals is not precluded from a further inquiry as to its jurisdiction and is not relieved of the duty to dismiss the appeal if it appears there is no jurisdiction.' *Austracan, Inc. v. M/V Lemoncore,* 5 Cir. 1974, 500 F.2d 237 at 239; *see also Cook v. Eizenman,* 5 Cir. 1963, 312 F.2d 134 at 136. Thus we must make the independent inquiry above."
511 F.2d 273, 276 n. 5 (CA5), *cert. denied,* 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975). In other circuits, *see Melendez v. Singer-Friden Corp.,* 529 F.2d 321 (CA10, 1976); *Cromaglass Corp. v. Ferm,* 500 F.2d 601, 604 n. 1 (CA3, 1974) (en banc).

To preserve even attenuated notions of finality, the collateral order doctrine requires a final disposition of the question by the district court, not a disposition that is "tentative, informal or incomplete." *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225, 93 L.Ed. at 1536; *see Abney, supra,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d at 659; *In re Nissan Motor Corp. Antitrust Litigation,* 552 F.2d 1088, 1095 (CA5, 1977); 15 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3911, at 470, 478–79 (1976). The order appealed from here is not tentative. In view of the court's outright dismissal of the claims, any argument of tentativeness loses its force.[7]

The dismissal of the counterclaim on an implied repeal ground, although final, hardly constitutes an order "completely collateral to the cause of action asserted." *Abney, supra,* 431 U.S. at 658, 97 S.Ct. at 2040, 52 L.Ed.2d at 659. The district court's decision that certain counterclaims must fail by virtue of FCC regulation in a particular area is a decision sustaining a substantive defense to the cause of action asserted; it is a "step toward the final disposition of the merits of the case." *Id., quoting Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225, 93 L.Ed. at 1536. Indeed, if the DAA counterclaims were all this case were about, the order would represent the end of the case.

Litigation continues only because a claim (patent infringement) and other counterclaims (discriminatory royalty) remain to be adjudicated.[8]

Nor can Milgo point to any right that would be "lost, probably irreparably," from waiting to appeal the DAA matters after decisions on its other counterclaims and on Western's infringement claim. The only injury Milgo may undergo here is that it may have to return to the district court to try those claims based on the DAA device. This is not enough. In sum, the order dismissing certain of Milgo's counterclaims is neither collateral nor irreparably injurious.

### (B.) Interlocutory order refusing an injunction

Milgo claims alternatively that the district court's dismissal of those parts of its counterclaims that challenged the DAA interconnection requirement was a refusal of Milgo's request for injunctive relief and is therefore appealable under § 1292(a)(1).[9] We need not decide whether the order refused injunctive relief because the prayer for injunctive relief is now moot.

During the pendency of this appeal the FCC's registration program went into effect. All the parties recognize that this program prevents Bell from categorically

---

7. The district court's order reads in pertinent part:

    "The Court has now read the [FCC's] First Report and Order in Docket # 19528 (released November 7, 1975). It appears that the Commission therein established a registration program for customer-provided equipment. Allegations of registration in accordance with that Order are absent from Milgo's filings. Thus, *at this time,* it appears to the Court that those paragraphs of Milgo's counterclaim which allege unfair competition and antitrust claims based upon the tariff are not properly before this Court."

    App. at 161 (emphasis added). The court's language "at this time" indicates not tentativeness, but rather that the court had changed its view *after having been apprised of the exact* nature of the registration program. Of course, under Federal Rule of Civil Procedure 54(b) the order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

8. Milgo based much of its argument on *Litton Systems, Inc. v. Southwestern Bell Telephone Co.,* 539 F.2d 418 (CA5, 1976), in which the court regarded as a collateral order a stay of an antitrust suit pending referral of an antitrust claim to state utility commissions so that they could clarify the degree of state action involved by virtue of their ratemaking. The court said that the stay pertained not to the merits of the claim but rather to the manner in which the case would be tried. 539 F.2d at 426. In this case, however, the court's order is not a stay pending referral but an outright dismissal.

9. "(a) The courts of appeals shall have jurisdiction of appeals from:

    (1) Interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;"

    28 U.S.C. § 1292(a)(1).

requiring the use of DAAs with modems not of Western's design. Accordingly, there is no longer any need for injunctive relief against the DAA requirement, and the justification for appellate review under § 1292(a)(1) no longer exists.

By complaining against Bell's DAA policy, Milgo sought both injunctive relief and damages. The district court's order effectively refused not only injunctive relief but also an award for damages, which is not moot. Appellate review under § 1292(a)(1) is ordinarily confined to the injunctive aspects of the district court's order, *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 461 F.2d 1040 (CA2, 1972); *Zwack v. Kraus Brothers & Co.*, 237 F.2d 255 (CA2, 1956); *Wrist-Rocket Manufacturing Co. v. Saunders Archery Co., Inc.*, 516 F.2d 846 (CA8), *cert. denied*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975); *see* C. Wright, Law of Federal Courts 513 (3d ed. 1976), but such confinement is a rule of judicial administration, not of jurisdiction. An appellate court has power to review the case to the extent it chooses to exercise it. *See Aerojet-General Corp. v. American Arbitration Association*, 478 F.2d 248, 252–53 (CA9, 1973); *Hurwitz v. Directors Guild of America, Inc.*, 364 F.2d 67, 69–70 (CA2, 1966). *See also Smith v. Vulcan Iron Works*, 165 U.S. 518, 524–25, 17 S.Ct. 407, 410, 41 L.Ed. 810, 812–13 (1897). Moore's Federal Practice ¶ 110.25[1], at 273. In this case where the injunctive aspects are moot and the justification for review under § 1292(a)(1) is no longer present, we doubt that we have the power to reach the remaining noninjunctive aspects of the district court's order, and, if we do, we decline to exercise it.

### (C.) All Writs Act

The parties have also urged, somewhat tardily, that we should resort to the extraordinary writ of certiorari to allow interlocutory review. *See* All Writs Act, 28 U.S.C. § 1651. Such writs should be used to allow interlocutory review only in very limited and unusual circumstances. We believe that review by certiorari is not appropriate for this case.

The appeal is DISMISSED.