**WESTERN ELECTRIC COMPANY, INCORPORATED, Plaintiff,**

v.

**MILGO ELECTRONIC CORPORATION and International Communications Corporation, Defendants and Third-Party Plaintiffs,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Third-Party Defendant.**

No. 74–1601–Civ.–SMA.

United States District Court, S. D. Florida.

March 27, 1978.

Fowler, White, Burnett, Hurley, Banick & Knight, Miami, Fla., Fish & Neave, New York City, for Western.

Mahoney, Hadlow & Adams, Miami, Fla., Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for AT&T.

Jackson & Jones, Tustin, Cal., Helliwell, Melrose & DeWolfe, Miami, Fla., for Milgo.

## ORDER DENYING PRELIMINARY INJUNCTION

ARONOVITZ, District Judge.

### BACKGROUND

Western Electric Company, Incorporated (Western) sued Milgo Electronic Corpora-

tion and International Communications Corporation (Milgo) for alleged infringement of ten (10) modem patents registered in the United States Patent Office by Western. In addition to the usual defenses, Milgo responded that Western and its parent, American Telephone and Telegraph Company, (AT&T), cannot enforce their United States and foreign patents because allegedly they are guilty of violating an anti-trust consent decree (Bell Consent Decree) requiring Western to grant patent licenses on its equipment. *U. S. v. Western Electric Co.,* 1956 Trade Cases Sec. 68,246 (D.N.J. 1956). Milgo also counter-sued Western and AT&T for damages and injunctive relief, charging violations of the anti-trust laws and acts of unfair competition.

Both Milgo and Western Electric manufacture terminal equipment known as data modems. "Modem" is an acronym for "modulation and demodulation". Modems, when connected to telephone lines, allow computers to send and receive information to and from each other.

In February, 1976 Milgo sought a Preliminary Injunction herein to prevent Western from suing its largest customer Racal-Milgo, Ltd. (Racal-Milgo) in the United Kingdom. Racal-Milgo is jointly owned by Milgo and Racal Electronic, Ltd. (Racal), a United Kingdom company. The Hon. C. Clyde Atkins, Chief U. S. District Court Judge for the Southern District of Florida, denied the relief sought on the basis that "the immediacy of real injury normally required for issuance of an injunction is not present."

Thereafter, on May 13, 1976, Western filed suit in the United Kingdom against Racal-Milgo for infringement of two (2) United Kingdom patents by the use and sale of Milgo's modems in England. *Western Electric Company, Inc. v. Racal-Milgo, Ltd.,* High Court, Chancery Division No. 1781 (1976) (U.K. Action.) One of the patents in the U.K. action corresponds to one of the patents in this suit. The other patent in the U.K. action does not, although it is similar to a U. S. patent application pending, but not yet issued to Western.

Racal-Milgo responded to the U.K. suit by pleading the Bell Consent Decree violation defenses and filing a Motion for a Stay Pending Determination of the U. S. Action. In June, 1977 the English Court responded by striking the defenses and rejecting the Motion for a Stay. That action in denying a stay is presently pending on appeal to an Appellate Court in the United Kingdom.

On or about August 31, 1977 Milgo moved in this Court for a Preliminary Injunction against Western's continued prosecution of the patent infringement action in the United Kingdom. This Motion for Preliminary Injunction is the matter presently pending for action before this Court at this time. Milgo's Motion for Preliminary Injunction is denied.

## COURT'S POWER TO ENJOIN

This Court has the power to enjoin a party over whom it has personal jurisdiction from pursuing litigation before a foreign tribunal. The issue here involved is whether the discretion to enjoin a foreign suit should be exercised on the particular facts of this case. *Harvey Aluminum v. American Cyanide Co.,* 203 F.2d 105 (2d Cir.) cert. denied 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953); *Cryomedics, Inc. v. Frigitronics of Conn., Inc.,* 355 PTCJ A–14 (D.Conn.1977); *Velsicol Chem. Corp. v. Hooker Chem. Corp.,* 230 F.Supp. 998, 1017 (N.D.Ill.1964). For the Court to exercise its discretion in that regard (a) the parties in the two actions must be the same; (b) the issues in the two actions must be the same; and (c) the resolution of the first action must be dispositive of the action to be enjoined. *Cresta Blanca Wine Co. v. Eastern Wine Corp.,* 143 F.2d 1012 (2d Cir. 1944). *Triangle C & C Co. v. National Electric Products Corp.,* 138 F.2d 46 (3d Cir. 1943).

(a) In this action Western Electric is plaintiff, as it is also in the United Kingdom action. Milgo/ICC are the defendants here, whereas Racal-Milgo, Ltd. is the defendant in the United Kingdom action. These defendants, although affiliated, are separate entities. Racal is an English corporation which owns substantially all of the

stock of Milgo. Racal also owns substantially all of the stock of Racal-Milgo, an English corporation, however, Racal *and* Milgo have not been merged. The following statement is attributed to Racal-Milgo's barrister, Mr. Thomas Blanco White, Q. C. before Justice Whitford in the United Kingdom proceeding:

> "I would merely point out that still, although ultimate financial control (of Milgo/ICC and Racal-Milgo) is in the same hands, *we are not the same company; we are not parties to the American action;* and the matter should not be treated simply on the basis that we can act here or we can act in America". (emphasis added) page 52 of the transcript of the second day's proceedings in the United Kingdom; Exhibit 1 to "Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for a Preliminary Injunction"

(b) The lack of common issues was commented upon specifically by Mr. Justice Whitford in his Opinion Denying Racal-Milgo's Motion to Stay the United Kingdom action.

> "The issues of infringement and validity of the United Kingdom patents can in the end, of course, only be decided here. Indeed, so far as No. 1,155,456 is concerned, there is no United States equivalent at present in suit. In so far as it is suggested that it would be oppressive to compel the defendants to fight the issues of infringement and validity in two countries because of the considerable effort in time and money which is necessarily going to be involved, I am of the view that there can be no case for a stay pending the determination of the issues of infringement and validity in the United States courts, for no decision in relation to the United States patents in those courts could conceivably be determinative of the issues so far as the United Kingdom patents are concerned." page 1 of the Whitford opinion, Exhibit 2 to "Plaintiff's

Memorandum In Opposition To Defendants' Motion For a Preliminary Injunction".

▇▇▇ It is settled that patents granted by different countries represent separate and distinct legal rights which should be controlled by the country granting the right. *Boesch v. Graff,* 133 U.S. 697, 10 S.Ct. 378, 33 L.Ed. 787 (1890). And it is abundantly clear that a finding that a U. S. patent is invalid will have no impact on the enforcement of a foreign counterpart patent, much less a completely different patent. *Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.,* 412 F.2d 577 (1st Cir. 1969); *Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co.,* 164 F. 869 (S.D.Ohio 1908).

In *Goodyear* in an earlier U. S. suit the U. S. patent was held invalid. Later the patent owner brought suit in Cuba against a Goodyear customer under the Cuban counterpart patent.* Goodyear then brought the Ohio action to enjoin prosecution of the Cuban action. The court denied the injunction in the following language:

> "The subject matter of the former suit in this case is not the same as the subject matter of the pending Cuban suit. In the one case the American patent to Grant was involved; in the other, a Cuban grant for the same invention." 164 F. at 876.

▇▇▇ Even if all the U. S. patents here in suit were found to be invalid, the validity of the United Kingdom patents (including the one having the U. S. counterpart) would still have to be determined under United Kingdom law.

Likewise a finding of non-infringement of the U. S. patent would have no bearing on whether U. S.—made modems infringe United Kingdom patents as determined under United Kingdom law. Still open also would be the question of whether United Kingdom-made modems infringe the United Kingdom patents.

---

* The facts in *Goodyear* are especially interesting because the Cuban counterpart was in fact the U. S. patent which had been registered in Cuba during the U. S. military occupation and given effect under Cuban law as a Cuban patent.

■ (c) It is fundamental that for a patent to be unenforceable because of unclean hands (misuse or antitrust violations) the patent in suit must be shown to have been misused. See *Republic Molding Corporation v. B. W. Photo Utilities,* 319 F.2d 347 (9th Cir. 1963) where the Court of Appeals dismissed a patent misuse defense for lack of relationship to the patents saying:

"What does seem clear is that misconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands. . . . As Professor Chafee suggests (page 1072), we should not by this doctrine create a rule comparable to that by which a careless motorist would be 'able to defend the subsequent personal injury suit by proving that the pedestrian had beaten his wife before leaving his home'." 319 F.2d at 349

Less colorful but equally applicable is the language of the Sixth Circuit in *Kolene Corporation v. Motor City Metal Treating, Inc.,* 440 F.2d 77, 84 (6th Cir. 1971):

"We know of no authority suggesting that there can be a defense to a patent infringement suit based on 'misuse in the air.' . . . The misuse must be of the patent in suit."

See also *Carter-Wallace, Inc. v. United States,* 449 F.2d 1374, 1383–1384, 196 Ct.Cl. 35 (1971); *McCullough Tool Company v. Well Surveys, Inc.,* 395 F.2d 230, 239 (10th Cir. 1968); *Binks Mfg. Co. v. Ransburg Electro Coating Corp.,* 281 F.2d 252, 259 (7th Cir. 1960); *Apex Electrical Mfg. Co. v. Altorfer Bros. Co.,* 238 F.2d 867, 872–873 (7th Cir. 1956).

■ Hence, for the United Kingdom patents involved in the suit against Racal-Milgo, Ltd. in the United Kingdom to be unenforceable under the doctrine of unclean hands as developed in the United States, there must be a finding that those two patents have been misused. Such a finding cannot occur in this litigation in which plaintiff asserts infringement of ten U. S. patents (not the United Kingdom patents) and defendants have specifically directed their misuse defenses against those ten U. S. patents and their antitrust counterclaims to a United States geographic market.

Thus, misuse of the United Kingdom patents is not an issue here and no finding here of misuse of the ten U. S. patents can have any impact on the United Kingdom patents or that litigation.

The specific language of the Bell Consent Decree and a Congressional hearing establish that the Bell Consent Decree does not cover foreign patents. Milgo/ICC argue to the contrary. However, all the obligations to grant licenses imposed by the Bell Consent Decree on Western Electric and AT&T and all the provisions of the Bell Consent Decree with respect to what the nature of those licenses must be and what can or cannot be in those licenses refer to "patents". "Patents" is defined in Section II (f) which in pertinent part states:

"For the purposes of this Final Judgment:

\* \* \* \* \* \*

(f) 'Patents' shall mean United States letters patents except for the reference to foreign patents in Section X(E)(3)."

Section X(E)(3) merely provides a royalty-free immunity under the foreign patents for items sold or used abroad which were manufactured under the Bell Consent Decree license:

"(3) If any licensee requests, a royalty free grant of immunity under all foreign patents owned or controlled by the licensor or its subsidiaries relating to the sale or use abroad of equipment manufactured under the license granted pursuant to this Section X."

■ It is clear that the Consent Decree, by its terms, imposes licensing obligations only with respect to U. S. patents. The licensing requirements and prohibitions of the Consent Decree apply only to the U. S. patents, except that a consent decree licensee who so requests may have a royalty free *immunity* under the foreign patents for goods manufactured in the U. S. pursuant to the U. S. license patents and sold or used abroad. Thus a finding that Western Electric has violated one or more of the strictures of the Consent Decree (rendering the U. S. patents unenforceable) cannot render

unenforceable the United Kingdom patents to which those strictures do not apply.

The statement of Emanuel Celler, Chairman of the House Committee on the Judiciary, further shows that it was not contemplated that the Consent Decree covered foreign patents:

"The primary relief. obtained in the decree relates to AT&T's and Western's patent. (Sic) The decree requires that licenses be granted to any applicant, on a non-exclusive basis, for all existing and future *United States* patents of the Bell System . . ." page 2021 Part II, Volume I, of the Committee Report on its Hearings. (Emphasis added)

Milgo strongly urges the applicability of *American Securit Company v. Shatterproof Glass Corporation,* 154 F.Supp. 890 and 166 F.Supp. 813 (D.Del.1957 & 1958) *aff'd,* 268 F.2d 769 (3d Cir. 1959), *cert. denied,* 361 U.S. 902, 80 S.Ct. 210, 4 L.Ed.2d 157 (1959) and *American Securit Company v. Hamilton Glass Company,* 254 F.2d 889 (7th Cir. 1954). However, all of *Securit's* patents were covered by the requirements and prohibitions of the consent decree therein and *Securit's* licenses practices with respect to all those patents were alleged to have violated that consent decree. Therefore, it was found that all those patents were unenforceable because of the decree violations. That holding and its rationale would not be applicable to foreign patents as is the case herein wherein the foreign patents are not subject to the prohibitions alleged to have been violated and as to which there have been no independent allegations of misuse.

## CRITERIA FOR ISSUANCE OF A PRELIMINARY INJUNCTION

■ The criteria necessary to obtain a preliminary injunction in the Fifth Circuit has recently been reaffirmed in *Barrett v. Roberts,* 551 F.2d 662, 665 (5th Cir. 1977):

"In order to obtain preliminary injunctive relief, a litigant is required to demonstrate: (a) a substantial likelihood of suc-

cess on the merits; (b) a substantial threat that the plaintiff will suffer irreparable harm unless the preliminary injunction is granted; (c) that the threatened injury to the plaintiff if the injunctive relief is denied outweighs the possible harm to the defendants if the relief is granted; and (d) that the issuance of injunctive relief will serve the public interest."

(a) At this point in time· the state of the record before this Court does not permit it to find that Milgo has sustained its burden of showing a substantial likelihood of success on the merits. It should be noted that Milgo has not sought a permanent injunction against Western's enforcement of its foreign patents. Those foreign patents are not at issue in this case and no findings of the merits of the allegations before this Court whether for or against Western will impact upon Western's right to enforce the foreign patents or the rights of others to defend against such enforcement.

The violations of the Bell Consent Decree asserted by Milgo are that (1) Western's licensees are required to pay an unreasonable royalty on Bell Labs' patents, (2) Bell System charges a discriminatory royalty rate; and (3) Western and Bell System required that DAA's be used only on customer provided equipment.

(1) The DAA argument has been mooted by reason of Milgo's response to the Fifth Circuit's request made pending an appeal [1] before that Court wherein Milgo admitted that the Registration Program with the Federal Communications Commission had made their request for injunctive relief moot with respect to the DAA [2] issues and therefore that Milgo would not request injunctive relief against the DAA requirement nor was there continuing damage from the allegedly wrongful DAA requirement. The Fifth Circuit held [1] therein that there was no need for such injunctive relief.

(2) and (3) The double royalties argument and the discriminatory royalty allegation

---

1. *Western Electric Company, Inc. v. Milgo Electronic Corporation* and *ICC v. American Telephone & Telegraph Co.,* 568 F.2d 1203 (5th Cir., 1978)

2. Data Access Arrangement (DAA) refers to a connecting device required by Bell to be used by its customers using modems not of Western's design.

asserted by Milgo have not reached that point in proof before this Court that they can be regarded as the basis for a conclusion of substantial ultimate success. Time and further evidence adduced prior to trial and at trial can change this but would have no bearing upon issuance of a preliminary injunction at this time. Therefore, Milgo's three misuse/Bell Consent Decree allegations have not now been sufficiently established.

(b) With regard to irreparable damage, the defenses which Milgo asserts, have already been held not to be available to Milgo-Racal in the United Kingdom; and the relief which Milgo seeks here has been denied to the defendant in the United Kingdom (although an appeal is pending). Therefore, the potential damage is nothing more than what Milgo should expect when and if Racal-Milgo, Ltd. is found to infringe the U.K. patents. The conjectural nature of the alleged potential injury is highlighted by the fact that Racal-Milgo, Ltd. has appealed the dismissal of the defenses and the denial of the Motion to Stay. Thus, Racal-Milgo is seeking concurrently in the United Kingdom the same relief which Milgo seeks here. Also Milgo argues that if it is deemed to be in the wrong with regard to the position asserted in the U.K. or in the United States that Milgo at any time can apply for and receive a license from Western under which it can then continue in business. Accordingly, should the United Kingdom action result in a decision in favor of Western prior to the time this action is concluded, Milgo could forestall the issue of an injunction in the United Kingdom by the simple expedient of taking a license. Such a course would preclude the alleged destruction of Racal-Milgo, Ltd.'s business.

(c) The possible harm that the issuance of an injunction herein would cause Western was aptly stated by Mr. Justice Whitford of the High Court of Justice when considering Racal-Milgo's Motion to Stay. Mr. Justice Whitford stated:

". . . This is certainly not a case where the plaintiffs can be accused of forum shopping; and I have to consider not only the position of the defendants, (Racal-Milgo, Ltd.) but the effect of a stay upon the plaintiffs (Western Electric). The result of the stay will be that they (Western Electric) will be held out of the possibility of securing an injunction, perhaps for the life of the patents and, even if the life of the patents be extended, who knows how long it may be before there is a final determination in the courts of the United States, whatever the estimates of the period for the first determination may be. While all this is going on, the plaintiffs are to stand by powerless to stop the defendants from building up a commercial position against the plaintiffs' licensees and licensing interests, which may stand them in very good stead even if eventually they fail upon the infringement and validity issues.

It appears to me that it would be an injustice to the plaintiffs to stay this proceeding, which was in no sense in its initiation either oppressive or vexatious." Pages 13 and 14 of the Whitford opinion, supra.

(d) No public interest would be served by enjoining a foreign action involving different patent grants from different sovereigns under different laws wherein different parties are involved, and particularly when the defenses raised in the United States Action can have no impact on the foreign action regardless of how they are determined. It is true that the English Court did not discourage Milgo from proceeding to seek a Preliminary Injunction herein, and implicit therein was a willingness to stand aside on the issue of comity. However, as herein indicated, Milgo has failed to meet the standards of criteria necessary for issuance of a Preliminary Injunction.

It should also be noted that, in cases wherein the complexity and novelty of the issues which have been raised and are apparent, this alone may constitute appropriate grounds to exercise the Court's discretion not to grant a preliminary injunction. *Cerruti, Inc. v. McCrory Corp.*, 438 F.2d 281 (2d Cir. 1971); *Dymo Industries, Inc. v. Tape Printer, Inc.*, 326 F.2d 141 (9th Cir. 1964); *Charles Simkin & Sons, Inc. v. Messiah*, 289 F.2d 26 (3d Cir. 1961); *Gen-*

*eral Electric Co. v. American Wholesale Co.,* 235 F.2d 606 (7th Cir. 1956). "The presence of novel legal issues, which require resolution at trial, preclude the grant of a preliminary injunction". *Dalmo Sales Co. v. Tysons Corner Regional Shipping Center,* 308 F.Supp. 988, 994 (D.D.C.1970), aff'd, 429 F.2d 206, 139 U.S.App.D.C. 22 (1970).

This Court has examined the Motion for Preliminary Injunction, the several memoranda of law addressed thereto by the respective parties, all exhibits offered, including affidavits and has likewise examined all applicable portions of the court record, heard extensive oral argument, and it is thereupon—

ORDERED AND ADJUDGED that the Motion for Preliminary Injunction be and the same is hereby DENIED.

DONE AND ORDERED at Miami, Florida this 27 day of March, 1978.

