**V & S VIN & SPRIT AKTIEBOLAG,**
Plaintiff,

v.

**Christina HANSON, Bo Ernfridsson and Absolut Beach Party Limited d/b/a Absolut Beach, Defendants.**

**CIV. No. 01–164–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 8, 2001.

Karla L. Palmer, McDermott, Will and Emery, Washington, DC, for Plaintiff or Petitioner.

Heather French, Akin, Gump, McLean, VA, for Defendant or Respondent.

1. Specifically, the current trademark registration covers swim wear and other clothing, including golf jackets, golf shirts, sweaters, shirts, t-shirts, jerseys, jackets, aprons, head wear, sweat suits, scarves, ski suits, and ties.

## ORDER

CACHERIS, District Judge.

In accordance with the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1) Defendants' Motion to Dismiss on grounds of *forum non conveniens* is **DENIED**; and

2) The Clerk shall forward copies of this Order and the accompanying Memorandum Opinion to all parties.

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss the Complaint on grounds of *forum non conveniens*. For the following reasons, the Motion is DENIED.

### I.

Plaintiff V & S Vin & Sprit Aktiebolag is a Swedish corporation that has manufactured Absolut vodka since its introduction in 1979. Plaintiff owns more than 15 valid U.S. federal trademark registrations for the mark ABSOLUT and variations thereof, six of which have achieved incontestable status. Trademark registration No. 1,811,766, for the mark ABSOLUT, covers an assortment of clothing items [1] and identifies Plaintiff's first use of the ABSOLUT mark on clothing in the U.S. as at least as early as 1984. Plaintiff owns approximately 90 internet domain names incorporating the trademark ABSOLUT.

Defendants Christina Hanson and Bo Ernfridsson are the owners of Defendant Absolut Beach Party Limited, an Australian corporation which does business under

On January 17, 2001, Plaintiff filed a petition for post-registration correction to the registration to remove "swim wear" from the registration.

the name Absolut Beach. Absolut Beach has registered two domain names with Network Solutions, Inc., of Herndon, Virginia: *absolutbeach.com*, registered on February 26, 1997, and *absolutebeach.com*, registered on January 16, 1998. The domain names are linked to Defendants' web site, which offers swimwear and beachwear for sale. Defendants also sell their product line through mail-order catalogue. A magazine article attached to Plaintiff's Complaint states that half of Defendants' sales are to customers outside of Australia, and 95% of those sales are to customers in the United States. *See* Complaint, Exh. 10. On the other hand, sales in this District have been few: Defendants state that bathing suits have been shipped to only thirteen Virginia residents in the four years since the company began operations, amounting to total sales of less than $550.00 (U.S.). Hanson Decl. at ¶ 9.

Plaintiff's Complaint,[2] filed January 31, 2001, includes five counts: federal trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114; federal unfair competition and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting, in violation of the Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d)("ACPA"); trademark dilution, in violation of the Lanham Act, 15 U.S.C. § 1125(c); and trademark infringement, unfair business practices, and unfair competition, in violation of the statutes and common law of Virginia. Plaintiff seeks a preliminary and permanent injunction[3] on Defendants' use of the ABSOLUT mark or similar names, use of the domain names *absolutbeach.com* and *absolutebeach.com*, and similar acts. In addition, Plaintiff seeks an Order requiring Defendants to transfer the registration and ownership of the two domain names to Plaintiff, as well as an Order requiring Defendants to turn over any promotional or business materials bearing the ABSOLUT mark or related names, including Absolut Beach. Plaintiff also seeks a final judgment declaring, *inter alia*, that Defendants infringed Plaintiff's legal mark knowingly and willfully and awarding Plaintiff actual damages, pre- and post-judgment interest, costs and expenses (including attorneys' fees). Finally, Plaintiff seeks an Order requiring Defendants to engage in corrective advertising.

## II.

The doctrine of *forum non conveniens* allows a district court, for the convenience of parties and witnesses and in the interest of justice, to transfer any civil action to any other district or division where it might have been brought.[4] For transfers to another federal district within the United States, 28 U.S.C. § 1404(a) generally governs, but for transfers from a United States district court to a forum outside the United States, the common law rules of *forum non conveniens* remain in place. Whether a motion to dismiss on the ground of *forum non conveniens* should be granted or denied is a matter entrusted to the discretion of the district judge. *Hodson v. A.H. Robins*, 715 F.2d 142, 144 (4th Cir.1983).

---

**2.** Earlier, Plaintiff initiated a lawsuit on substantially the same cause of action in the United Kingdom.

**3.** Although its Complaint asks for a worldwide injunction, at oral argument on the Motion Plaintiff's counsel represented to the Court that Plaintiff no longer seeks a global injunction against Defendants' use of the Absolut mark.

**4.** The Court finds that its discussion of *forum non conveniens* embraces any issues of comity that might arise concerning forum selection.

The Fourth Circuit has explained that "[a] *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Kontoulas v. A.H. Robins Co.,* 745 F.2d 312, 315 (4th Cir.1984) (*citing Veba–Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir. 1983)). On the other hand, dismissal is proper where "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). When the plaintiff is not a citizen or resident of the United States, the Court's deference to the plaintiff's choice of forum is somewhat diminished. *Id.* at 266, 102 S.Ct. 252; *see also Macedo v. Boeing Co.,* 693 F.2d 683, 688 (7th Cir.1982).

The Supreme Court laid out specific factors to guide a court's *forum non conveniens* assessment in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):

An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.... [U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed....

Factors of public interest also have place in applying the doctrine.... There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

330 U.S. at 508–09, 67 S.Ct. 839. *See Rankine v. Rankine,* 166 F.3d 333, 1998 WL 808203 (4th Cir.1998).

## III.

Plaintiff contends that Defendants' use of the word "Absolut" in their trade name "Absolut Beach" infringes Plaintiff's trademark rights and dilutes the famous qualities of the ABSOLUT mark. In addition, Plaintiff contends that Defendants' trade name is confusingly similar to Plaintiff's registered mark and that Defendants are intentionally luring web users to their internet site with the infringing name. Plaintiff asserts that Defendants seek to exploit the good will in the ABSOLUT mark that Plaintiff's twenty-year advertising campaign has created in the mark.

Because Defendants argue that *forum non conveniens* militates against a Virginia court's deciding the issues presented here, the Court weighs the respective private interests of each party and the public interests bearing on the case.

Defendants' private interest for dismissal is very strong. Defendants describe the inconvenience to them of litigating the matter in the Eastern District of Virginia, including the location in Australia of all witnesses and relevant documents. The cost of obtaining the attendance of many of the witnesses, who are in Australia, would be high, and unwilling witnesses cannot be compelled to appear in the United States. The financial burden the litigation would impose on Defendants would be steep, and

Defendants are already engaged in defending litigation on similar facts in the United Kingdom. By affidavit, Defendant Christina Hanson states that the cost of defending the United States and United Kingdom lawsuits will be approximately half of the company's 2001 sales income. Hanson Decl. at ¶ 27. Defendant Hanson further states that such an expenditure may force the company into bankruptcy. *Id.* at ¶ 25.

Plaintiff suggests that its private interest in litigating in this District is equally strong. Its trademark rights in the United States are unquestionable and include more than 15 registrations with the Patent and Trademark Office. The United States is by far Plaintiff's largest market, including sales of both vodka and merchandise bearing the ABSOLUT mark. Plaintiff has spent a substantial amount of money establishing its name recognition in the United States market. It has an undeniable interest in protecting the good will it has established, and it is not at all clear that it could obtain the same relief from a court in Australia or the United Kingdom, *e.g.,* the protections afforded by the Lanham Act and particularly the ACPA. Plaintiff states its intention to call as witnesses actual and potential Absolut Beach customers in the United States who will demonstrate confusion over the similar trade names; obviously, this forum is more convenient to them than would be an Australian forum. Finally, Plaintiff contends that the speed and efficiency of this District in resolving cases will alleviate the irreparable harm it continues to suffer from Defendants' infringement of its ABSOLUT mark.

■ Plaintiff's choice of forum should be given deference unless the balance of factors favors Defendants. *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 509, 67 S.Ct. 839. Balancing the relevant private interests of each party, the Court finds that they do not sufficiently favor dismissal in favor of another forum. As a general proposition, litigation is expensive and burdensome. The Court acknowledges that it does appear that litigation in this district would be quite burdensome to Defendants. The fact that Plaintiff already instituted the ongoing litigation in the United Kingdom suggests that for Plaintiff, at least, that forum would not be unduly inconvenient. However, the Court does not believe dismissal is warranted simply to transfer the greater burden of inconvenience from one party to the other. The Court finds that Plaintiff's private interest is sufficiently strong to defeat the motion to dismiss.

■ Public factors bearing on the question lead to the same conclusion. Public factors include court congestion, any local interest in having localized disputes tried at home, "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft,* 454 U.S. at 241, 102 S.Ct. 252. The Court recognizes that Plaintiff does a great deal of business in the United States, has valuable trademark rights here, and has built up substantial good will for its ABSOLUT mark. There is a local interest in hearing claims that allegedly trademark-infringing communications were directed toward this District, and the United States generally, from Defendants' location in Australia via the internet and catalogue distribution. It does not appear that the suit was brought in this District merely to harass or vex Defendants.

Other public factors support Defendants' position. None of the parties before the Court is a United States citizen or located in the United States. International comity concerns may bar the Court from issuing Plaintiff's desired injunctive relief under

the Lanham Act, at least in a form that the Court could enforce in Australia, the largest market for Defendants' sales, since the Australian government has recognized the validity of Defendants' trademarks. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 286–87, 73 S.Ct. 252, 97 L.Ed. 319 (1952). If Plaintiff were to pursue its desire for a worldwide injunction on Defendants' use of the ABSOLUT mark,[5] the Court might have to engage in an analysis of the legitimacy of the claimed trademarks *under Australian law*, which is undoubtedly a legal issue outside the Court's area of expertise.

■ On the other hand, the Complaint includes only U.S. legal bases, *i.e.*, the Lanham Act, the ACPA and the common law of Virginia, and as noted above, Plaintiff has apparently abandoned its efforts to obtain a global injunction. Thus, the public factor concerned with interpretation of foreign law leans toward retaining the matter in this Court, which is well-acquainted with the laws at issue, rather than deferring the matter to an Australian court. This is particularly relevant because trademark rights are territorial and exist according to the terms of each country's laws. *See Person's Co. v. Christman*, 900 F.2d 1565, 1568–69, 14 U.S.P.Q.2d 1477 (Fed.Cir.1990) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme.").

In addition, Defendants have not met their burden of demonstrating to the Court that an Australian court is an adequate alternative forum for litigating this matter. *See Piper Aircraft*, 454 U.S. at 258, 102 S.Ct. 252. Defendants have agreed to submit to the jurisdiction of an Australian court, *see* Hanson Decl. ¶ 31, and contended at oral argument that Plaintiff would not be barred by any statute of limitations from pursuing the suit in Australia. Clearly, Plaintiff can only obtain relief under the specific statutes at issue—the Lanham Act and the ACPA—in a U.S. court. Defendants, of course, need not prove that the remedy available from an Australian court is precisely the same as that available from this Court. *See Piper Aircraft*, 454 U.S. at 261, 102 S.Ct. 252. However, the newness of internet law and the apparent lack of an Australian equivalent to the ACPA weigh against the adequacy of an Australian forum in this action.[6] Additionally, even if it prevailed in enforcing its rights to the ABSOLUT mark, Plaintiff might face difficulties enforcing the Australian court's judgment in the United States; such difficulties would undercut the value of Plaintiff's U.S. trademark rights in the famous ABSOLUT mark. A trademark holder seeking to enforce its U.S.-registered marks against infringing domain name registrants should not be penalized in the exercise of those rights *merely* because the parties involved are not United States citizens.

The Court is not concerned that retaining this matter in this District will improperly burden local citizens with jury duty, *see Piper Aircraft*, 454 U.S. at 241, 102 S.Ct. 252, because the laws at issue were instituted precisely to protect those citi-

---

5. Again, at oral argument on the motion to dismiss, counsel for Plaintiff represented to the Court that Plaintiff now seeks an injunction limited to Defendants' use of the mark *in U.S. commerce*.

6. Defendants contend that the Australian common law action for passing off may pro-

vide for an analogous action. They cite a recent New Zealand case, *Oggi Advertising Ltd. v. McKenzie and Others*, 1998 44 IPR 661, noting that it will be persuasive to an Australian court. Because the cause of action has not yet been recognized in Australia, however, its availability is necessarily speculative.

zens from deception and fraud in trade practices.

The Court recognizes that "[a] *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Kontoulas,* 745 F.2d at 315. Having weighed all the factors presented by this case, and giving Plaintiff's choice of forum somewhat less deference because of its foreign citizenship, the Court concludes that the balance of the public and private interests of the litigants does not favor dismissal.

### IV.

Finally, Defendants argue that the Court should dismiss or stay this action in favor of the first-filed lawsuit pending in the United Kingdom. A district court may dismiss or stay an action where it finds that litigating the case would be inconvenient or present a danger of piecemeal litigation, or where jurisdiction over the case previously attached in another court. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

The Court finds this argument for dismissal or stay unpersuasive. As noted above, trademark rights are inherently territorial. They therefore are properly adjudicated under their creator's laws. A favorable decision by the United Kingdom court will not necessarily protect Plaintiff's United States trademark rights, because of the basic concept of territoriality in trademark law. As the Fifth Circuit remarked, "trademark rights exist in each country solely according to that country's statutory scheme." *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 599 (5th Cir.1985). Thus, an action in a United States court is neces-

sary to determine Plaintiff's United States trademark rights to the ABSOLUT mark and whether Defendants have infringed those rights. The suit pending in the United Kingdom will not accomplish that goal. Thus, dismissal or stay on *Colorado River* grounds is not proper.

### V.

For the foregoing reasons, the Motion to Dismiss is DENIED. An appropriate Order will issue.