**LINEAR PRODUCTS, INC., Plaintiff,**

v.

**MAROTECH, INC., Defendant.**

No. Civ.A. 4:01CV00067.

United States District Court,
W.D. Virginia,
Danville Division.

March 1, 2002.

Christopher Channing Spencer, Robert L. Wise, Robert L. Wise, Bowmam & Brooke, LLP, Richmond, VA, for Plaintiff.

Wyatt B. Durrette, Jr., Durrette Bradshaw, P.L.C., Richard, VA, James A.G.

Hamilton, Perkins, Smith & Cohen, LLP, Boston, MA, for Defendant.

## MEMORANDUM OPINION

KISER, Senior District Judge.

Before me is defendant Marotech, Inc. ("Marotech")'s Motion to Stay Proceedings filed February 7, 2002, as well as Marotech's Motion for Resetting of Trial Date filed February 19, 2002.

Plaintiff Linear Products, Inc. ("Linear"), an assignee of two United States Patents for high-speed packaging tape, has filed a complaint for patent infringement along with a motion for preliminary injunction. Linear previously filed a parallel lawsuit concerning its nearly identically worded Canadian Letters Patent in the Superior Court in Quebec. Trial in the Quebec lawsuit reportedly began in January, 2002, and is expected to conclude before the end of summer. Trial before this Court is scheduled to begin July 29, 2002. Marotech asks for a stay of proceedings in this Court under the doctrine of international abstention. Marotech also moves to continue this Court's trial date for at least another two months.

The parties fully briefed the issues and were heard in oral argument before this Court on February 22, 2002, making these matters ripe for disposition. For reasons set forth in this Memorandum Opinion, Marotech's Motion to Stay is **DENIED**, and its Motion for Resetting Trial Date is **GRANTED**.

## I. BACKGROUND

*Facts and Procedural History*

Linear, a Washington corporation, sells reinforcing tape, "tear" tape, and machines that dispense them. Tear tape reinforces the handles of soft drink and beer cartons. The spools of tape have a patented "pin and loop" feature which automatically

splices the tail portion of one roll of tape to the leading portion of another so that cartons can be manufactured continuously. *See* Complaint, Ex. A and B (U.S. Patents 4,917,327 and 5,029,768). The "pin and loop" is attached to the tape itself. *See* Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction ("Pl."), 1–4, esp. Fig. 3, and Ex. B, Fig. 1–3. While one tape is rolling out, another roll of tape is attached to it by a string loop through which the first tape runs. The end of the first tape contains a pin which snags on the loop of the second tape as it runs through, pulling the second roll of tape out and splicing with it automatically. The machine to which these spools are attached contains tensioners and brakes to keep the transition smooth. Linear bought the rights to the tape from H.B. Fuller Co. ("Fuller") in 1995.

Martin Robitaille, previously a Technical Manager for a H.B. Fuller–Sesame, Inc., allegedly a Fuller affiliate or subsidiary, left that firm in 1990, and formed Marotech in 1992. Robitaille is Marotech's sole stockholder. Both Robitaille and Marotech are residents of Quebec. Linear alleges that Marotech has begun competing with Linear, hijacking Linear's customers, among which is the Smurfit–Stone Container Corporation ("Smurfit"), which has 18% of the North American container board market and owns a large carton manufacturing plant in Martinsville, Virginia. Linear alleges that Marotech is selling a self-splicing tape which infringes its patents.

Linear previously filed a lawsuit against Robitaille and Marotech in 1995, alleging theft of trade secrets, breach of an employment covenant, and patent infringement. The District of Minnesota dismissed the infringement claim without prejudice due to lack of personal jurisdiction. *See H.B. Fuller v. Robitaille*, No. 4–95–CV–851, slip opinion (D.Minn. Jan. 3, 1997). Linear's present complaint states a single count of patent infringement. It was filed on December 17, 2001, along with a motion for a preliminary injunction under 35 U.S.C. § 283. Marotech has moved for a stay, claiming that a patent action by Linear on a "substantially identical" Canadian Letters Patent, first filed in December 1995, began trial in Quebec in January, 2002.

Taking Marotech's Motion for Stay under advisement at the time, I heard evidence on Linear's Motion for Preliminary Injunction on February 21 and 22, 2002. I have allowed the parties to keep the record open in that matter to allow submission of further specific evidence, and so my decision with regard to preliminary injunction is still pending.

## II STANDARD OF JUDGMENT

The decision whether or not to stay a case pending in district court lies within the sound discretion of the court to control its docket, absent a statute removing that discretion. *U.S. v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001) (Federal Arbitration Act revokes normal district court discretion to deny stays of arbitrable matters); *Summer Rain v. Donning Company Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir.1992) (courts normally have discretion to order stays of proceedings before it, due to their inherent power to control their dockets).

The Federal Circuit Court has exclusive jurisdiction over final decisions of U.S. district courts concerning patent matters. 28 U.S.C. § 1295(a)(1). However, unless it is clear that by ordering a stay a district court intends to take no further action with regard to the litigation, such orders are not normally final. Wright, Miller & Kane, 15A *Federal Practice & Procedure*, 2d, § 3914.13 (West 1992, p. part 2001) (*citing, among others, Moses H.*

*Cone Mem. Hospital v. Mercury Construction Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *Slip Track Sys., Inc. v. Metal Lite, Inc.,* 159 F.3d 1337, 1339–1340 (Fed.Cir.1998) (discussing instances in which a district court's stay of a patent action might be appealable to the Federal Circuit). In this case, no statute arguably mandates or precludes a stay, and a stay will not effectively preclude or moot plaintiff's patent infringement action before this Court. Thus, as a formal matter, I must give priority to the Fourth Circuit's precedents concerning a district court's discretion to consider a stay. In point of fact, there is no relevant difference between the Fourth Circuit's and the Federal Circuit's jurisprudence on the issue.

■ A district court's decision to grant or deny a request to continue is likewise a matter left to the court's sound discretion. *Cromwell Field Associates, LLP v. May Dept. Stores Co.,* 5 Fed.Appx. 186, 189–190, 2001 WL 208501, *3 (4th Cir.2001) (*citing Nguyen v. CNA Corp.,* 44 F.3d 234 (4th Cir.1995)).

## III DISCUSSION

### A. International Abstention

Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon them. *Colorado River Water Conser. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Nevertheless, in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction. Therefore, federal courts have begun to fashion principles that guide courts' actions in cases of concurrent jurisdiction in a federal court and the court of a foreign nation.

*Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1518 (11th Cir.1994). The doctrine of "international abstention" has been fashioned by a number of district courts which have applied the abstention principles articulated in *Colorado River* to situations in which there are parallel proceedings in different countries. They have do so by "lift[ing] the criteria of analysis from case law concerning concurrent jurisdiction between federal and state courts." *Id.* Application of the doctrine appears to be a matter of first impression within trial and appellate courts of the Fourth Circuit.

Synthesizing a standard from various lower court decisions, the Eleventh Circuit in *Turner* explained that a U.S. court may stay proceedings before it when a foreign court is deciding a matter between the parties similar to the one before it, as long as: (1) a stay would promote international comity between sovereign nations' courts, (2) fairness to litigants will be respected, (3) a stay will promote efficient use of judicial resources. *Id.* According to the court, U.S. courts should analyze the first abstention factor, *international comity,* using the same factors under which it would evaluate a foreign judgment, i.e., (1) whether the judgment was rendered via fraud, (2) whether it was entered by a competent court utilizing proceedings consistent with civilized jurisprudence, (3) whether the judgment violates American public policy because it may be indecent or unjust. 25 F.3d at 1519. The court in *Turner* added that courts should also weigh (4) the relative strengths of each sovereign's interests. 25 F.3d at 1521. Three *fairness* factors for a court to consider are: (1) the order in which the suits were filed, (2) the convenience of the forums, and (3) the possibility of prejudice due to abstention. 25 F.3d at 1522. Finally, the factors relevant to *judicial efficiency* include: (1) inconvenience to the parties posed by the federal forum, (2) the desirability of avoiding piecemeal litigation, (3) whether the actions have common parties and issues, and (4) whether the

alternative forum is likely to render a prompt disposition. *Id.* (citations omitted).

The substantive legal issue in *Turner* was whether a German licensee had rights under a contract to broadcast Turner's programs in Germany via a certain satellite. Interpretation of the licensing contract required judicial gap-filling. At the time of the district court's stay, the plaintiff had filed actions in Germany and the United States. The U.S. district court had already granted a motion for preliminary injunction, but stayed the injunction pending appeal of an earlier motion to dismiss or stay the domestic litigation. While appeal was pending in the United States, the German court heard the merits of its case; filling a gap in the contract, it granted judgment on the merits in favor of the German defendant approximately three weeks after the U.S. district court's stay. 25 F.3d at 1517. At the time the Eleventh Circuit heard *Turner*, the German court had yet to rule on Turner's appeal or on the amount of any fees that the defendant would have to pay under the newly interpreted contract. 25 F.3d at 1522.

In deciding the issue of international comity in favor of a stay, the court placed great weight on the fact that the German court had heard the case on the merits and had rendered judgment. Indeed, the Supreme Court precedent on which the court relied stemmed from actions to enforce foreign judgments. *See* 25 F.3d at 1519 (discussing *Hilton v. Guyot,* 159 U.S. 113, 163–164, 16 S.Ct. 139, 40 L.Ed. 95 (1895)). The *Turner* court observed that the same criteria applied because there had been a judgment on the merits. 25 F.3d at 1519 n. 11. The court also reasoned that the relative strength of the German interests warranted a stay, citing the facts that disposition of the case required thorough knowledge of European broadcasting technology and markets, that the contract was to be performed in Germany, and that

German witnesses would present most of the testimony. 25 F.3d at 1521. Against the plaintiff's protestation that the German court's gap-filling decision abrogated his freedom of contract, and was thus in violation of American public policy, the Eleventh Circuit cited Turner's concession that the forums followed similar gap-filling rules where a contract appears, as it did in this case, to be silent on the dispositive issue. 25 F.3d at 1520. Thus, international comity favored staying the American litigation.

On the issue of fairness, the Eleventh Circuit noted that the parallel lawsuits were filed within only a week of each other; therefore, it declined to give weight to that factor. As before, the court found that the German forum was the most convenient for the parties. It also ruled that Turner's ability to obtain a fair and just result would not be prejudiced in granting deference to the German proceedings. 25 F.3d at 1521–1522. On the issue concerning the efficient use of judicial resources, the court was impressed by the fact that the German court had already reached a judgment on the merits. The court could easily analogize the issue before it to situations in which courts were asked to extend comity by honoring a foreign court's judgment. Furthermore, the parties conceded that the issues and parties were the same in both lawsuits. Accordingly, the Eleventh Circuit upheld the stay, with the proviso that after the German litigation was complete, the plaintiff had leave to seek a hearing as to whether the results altered any of the issues discussed in its analysis. 25 F.3d at 1523.

B. *The facts of this case do not warrant application of international abstention.*

█ The dispositive difference between this case and the cases cited by the defen-

dants, including *Turner*,[1] is the fact that no single document governs the issues litigated in both lawsuits. In the cases cited by the defendant, courts have extended comity to the foreign court's interpretation of a single operative document.[2] Indeed, in *Turner*, it was conceded that the foreign court applied rules of contract interpretation that were very similar to those likely to be applied by the American court. In this case, however, we have two sets of operative documents with separate territorial effect governed by different sovereign's statutes and rules of validity. Even if this Court granted deference to the Canadian court's interpretation of Marotech's behavior with respect to the Canadian Letters Patent, it is far from certain that the same interpretation would be consistent with Unites States' statutes and policies if applied to the United States' Patents. Accordingly, any analysis under *Turner* must fail on the factors of the sovereigns' relative interests in the litigation, the identity of issues, and possibly even fairness to litigants.

Similar conclusions have been reached by courts deciding whether to enjoin a party from litigating parallel patent and trademark claims in foreign jurisdictions. In *Stein Assoc., Inc. v. Heat and Control, Inc.*, 748 F.2d 653, 658 (Fed.Cir.1984), for example, the court refused to enjoin a party from litigating a parallel patent case in Great Britain, holding that "resolution of the domestic action will not dispose of the British action. Only a British court, applying British law, can determine validity and infringement of British patents ...

[T]he question of whether United States patents are valid could have no binding effect on the British court's decision." *See also; Western Elec. Co. v. Milgo Elec. Corp.*, 450 F.Supp. 835, 839 (S.D.Fla.1978) (same); *Glaverbel Societe Anonyme v. Northlake Marketing & Supply Inc.*, 48 U.S.P.Q.2d 1344, 1350 (N.D.Ind.1998) (res judicata could not be used to enjoin a later patent suit in Belgium; "the issue of the validity of the Belgian patents could not have been resolved in the [prior United States suit over U.S. patents], because that issue was only capable of resolution in a Belgian court"); *Cryomedics, Inc. v. Frigitronics of Conn., Inc.*, 1977 WL 22807, 196 U.S.P.Q. 526, 527 (D.Conn.1977) (injunction of parallel foreign suit not appropriate, because "although the present lawsuit involves a single product, the alleged infringement and the validity of the underlying patent are to be judged by two separate and distinct legal standards.... [I]t is by no means certain, or even likely, that plaintiff's loss here will make the British suit unnecessary"). In *V & S Vin & Sprit Aktiebolag v. Hanson*, 146 F.Supp.2d 796 (E.D.Va. 2001), the district court ruled that international comity did not warrant stay of a trademark infringement action where jurisdiction over an identical suit had already attached in the United Kingdom. Among its reasons were: (1) the producer did substantial business in the United States and had valuable trademark rights there; (2) the American complaint included only U.S. causes of action, (3) trademark laws are territorial and exist according to the terms of each country's

---

1. The absence of a judgment in the Canadian litigation is a telling distinction between this case and the *Turner* case. The principles of comity are much more deeply implicated where the foreign court has resolved the dispute on the merits. If the judgment meets the remaining criteria, foreign relations are promoted by recognizing the lawful acts of another sovereign.

2. These include *Boushel v. Toro Co.*, 985 F.2d 406 (8th Cir.1993) and *Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F.Supp. 1233 (D.D.C. 1982). In the former, the court extended deference to a Canadian court's interpretation of a distributorship agreement; in the latter, the court extended deference to a Canadian's court's interpretation of an insurance policy.

law; and (4) a favorable decision in the U.K. would not necessarily determine the producer's U.S. rights. The first three reasons seem to apply equally in this case; the fourth applies as well, because I am not required to give the Quebec court's judgment on the Canadian patent preclusive effect as to issues concerning the U.S. patent.[3]

■ Secondly, it is not clear that the issues in each lawsuit are in fact the same. In this Court, Marotech seeks a preliminary injunction. That form of relief, and all the particular proofs that have to be made before it can be granted, are not before the Quebec court. Indeed, it has not been shown that Canadian law even allows preliminary injunction.[4] Preliminary injunction is widely recognized to be a remedy unique from permanent injunction and monetary damages. *See MicroStrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 339 (4th Cir.2001) ("preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances"); *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 195–197 (4th Cir.1977) (delineating four-factor test a party must pass before it is entitled to a preliminary injunction). Similarly, a plaintiff need only show a likelihood of success on the merits, among other things, in order to obtain a preliminary injunction—not success itself, which may be determined by a different fact finder such as a jury. It is entirely possible that a party may prove entitlement to a preliminary injunction, yet still lose the case on the merits.

Marotech attempts to moot these concerns by stipulating that if litigation is stayed in this Court, it will abide by whatever decision I reach with regard to the U.S. Patents after I review the Quebec court's final decision. This is a generous offer, but it is not so clear that the stipulation won't cause more trouble than it saves. For one, Linear is not bound by it. It may be the case that Canadian patent law looks much more favorably upon the defendants than United States law does, or that the Quebec court will apply its laws in a manner objectionable to Linear. The same applies to the Quebec court's evidentiary rulings, which may affect the outcome of that litigation. In such a case, it is likely that this Court will have to revisit some or most of the Quebec court's legal and factual findings. Meanwhile, all progress on the case before this Court will have been stayed to the plaintiff's detriment. Given such a possibility, I cannot state for certain that a stay of proceedings in this court will not prejudice the plaintiff. This is particularly the case given that a stay would prevent this Court or a reviewing court from granting Linear's motion for preliminary injunction—a remedy that is available only when the plaintiff proves that "irreparable harm" will follow if one is not granted. For all of these reasons, I decline to apply international abstention,

---

**3.** Although this Court is not bound by the Quebec's courts ruling, I note that when the defendant previously asked the Quebec court stay proceedings here, that court refused, stating, among other reasons, that "the rights conferred upon a patentee under the [Canadian] Patent Act are limited territorially to Canada." Pl. Trial Ex. 68 (*Marotech, Inc. v. Linear Products, Inc.,* No. 200–05–016342–029, slip opinion (Sup.Ct. Quebec Feb. 5, 2002) (citation omitted) (translated from the French)), 5. The court also stated that "it is ill-founded to contend that the Superior Court has heard in Quebec the same dispute as the one pending in Virginia. Each proceeding concerns but the territorial patents in force in each country." Slip op. at 6.

**4.** *See Marotech,* slip. op. at 5 ("the right to an interlocutory injunction does not exist in the present case").

and deny the defendant's motion to stay proceedings in this Court.

### C. A continuance is granted out of fairness to the defendants.

 A reset trial date, not a stay, is appropriate in this case. Trial has apparently commenced in Quebec, and will continue until at least June, 2002. Marotech is a small, solely-owned Quebec company of nine employees. To require Marotech to begin trial preparation in this jurisdiction while it is actively engaged in a trial of similar issues in Quebec would work a distinct hardship on this defendant and on the witnesses. The prospect of having to coordinate parties' and witnesses' schedules between parallel proceedings also supports granting a continuance until the Quebec trial is completed.

The plaintiff correctly states, at least as a legal proposition, that there is no compelling reason to reset the trial date. However, continuances are routinely granted for nothing more compelling than the convenience of the parties or the Court. And while I am mindful of the fact that Linear claims irreparable harm as a result of Marotech's alleged continuing infringement, the merits of that claim will be addressed by my pending decision concerning Linear's motion for preliminary injunction. If Linear is indeed suffering irreparable harm, and if it appears that Linear is likely to succeed on the merits of its claim, a preliminary injunction will prevent further irreparable harm from occurring. If Linear is not entitled to preliminary injunction, a continued trial date should not allow Linear to suffer any further *irreparable* harm.

For these reasons, I will continue the trial date for at least sixty days to a date to be determined by agreement of the parties, or, if no agreement can be reached, to a date soon thereafter which is convenient for the Court.

## IV CONCLUSION

For the foregoing reasons, Marotech's Motion for Stay is **DENIED,** and its Motion for Resetting the Trial Date is **GRANTED.** The parties are directed to contact the Clerk's Office to reschedule a trial date for September 30, 2002, or as soon as practicable thereafter.

An appropriate Order shall issue.

### *ORDER*

Before me is defendant Marotech, Inc. ("Marotech")'s Motion to Stay Proceedings [Document No. 10] filed February 7, 2002, as well as Marotech's Motion for Resetting of Trial Date [Document No. 14] filed February 19, 2002.

The parties fully briefed the issues and were heard in oral argument before this Court on February 22, 2002. For reasons set forth in this Memorandum Opinion, submitted contemporaneously herewith, Marotech's Motion to Stay is **DENIED,** and its Motion for Resetting of Trial Date is **GRANTED.** The parties are directed to contact the Clerk to set a trial date for September 30, 2002, or as soon as practicable thereafter.

The Clerk is directed to send a certified copy of this Order to all counsel of record.